**Debra CHARLES, Appellant,**

**v.**

**MISSOURI DIVISION OF EMPLOYMENT SECURITY,**

**and**

**M.J. Associates, Inc.,**

**and**

**The Labor and Industrial Relations Commission of Missouri, Respondents.**

**No. WD 39778.**

Missouri Court of Appeals, Western District.

April 26, 1988.

David Kite, Mid–Missouri Legal Services Corp., Jefferson City, for appellant.

Ninion S. Riley, Sandy Bowers, Jefferson City, for respondent Div. of Employment Sec.

James B. Crenshaw, Jefferson City, for respondent Labor and Indus. Relations Com'n.

M.J. Associations, Inc., Ellisville, respondent pro se.

Before MANFORD, J., Presiding, and TURNAGE and COVINGTON, JJ.

COVINGTON, Judge.

Debra Charles appeals from a judgment of the Circuit Court of Cole County, Missouri, affirming the order of The Labor and Industrial Relations Commission of Missouri which denied review of a decision by the Appeals Tribunal of the Division of Employment Security and adopted the findings and decision of the Tribunal. The Tribunal rejected Ms. Charles' claim for unemployment benefits. Judgment affirmed.

Debra Charles was employed in Missouri by M.J. Associates, Inc., for a period of approximately eight months. The President of M.J. was Mary Weman, who hired Debra Charles and with whom Ms. Charles conducted the employee-employer relationship. Ms. Charles initially discussed employment with Mary Weman in May, 1984, at which time Debra Charles told Mary Weman that she wanted to earn $500 per week. Debra Charles believed that she would receive an automobile and a computer within three months of commencing employment and that she would earn $500 per week salary.

In August, 1984, Debra Charles left her position with the United States Courts to take employment with M.J., according to Ms. Charles' testimony, although she had not actually been offered a position by M.J.

On October 8, 1984, after frequent contact with M.J., initiated by Ms. Charles, she commenced employment with M.J. at a salary of $200 per week. M.J. indicated that the salary would increase. Both the time at which the salary would increase and the amount to which the salary would increase were indefinite. After two months employment, Ms. Weman and Debra Charles discussed Ms. Charles' teaching classes at Carondelet Community School, the income from which, after receipt by M.J., would be paid to Debra Charles. Ms. Charles taught the course which began in January and was to end May 15. Later, her salary increased to $240 per week.

On May 8, 1985, Ms. Charles prepared a letter of resignation. Her stated reasons for terminating employment were: failure to receive $500 per week salary; failure to receive a computer; failure to receive income from teaching at Corondelet; and, generally, failure of the job to develop as promised.

Mary Weman's testimony controverted that of Debra Charles with regard to all promises which Debra Charles alleged were made by M.J. Yvonne Jacobs, a current employee of M.J., corroborated the testimony of Mary Weman and further stated that Debra Charles had told her that Charles left her job with the court system because she was unable to get along with her employer. Additionally, Ms. Jacobs stated that M.J. had not yet received income for teaching the course at Carondelet at the time Debra Charles terminated her employment.

Ms. Charles, a resident of Illinois, filed an interstate claim for benefits. Having received an adverse Deputy's Determination, she filed an interstate appeal. The form offered the claimant a hearing in Illinois or in the state against which she was appealing, Missouri. Ms. Charles elected a telephone hearing. After a telephone hearing in which both parties participated, the appeals referee affirmed the deputy's determination finding the conditions of Ms. Charles' employment in May, 1985, to have been substantially those which were accepted by her in October, 1984, and finding that the employer did not fail to fulfill the terms of the hiring agreement made in October, 1984.

On January 16, 1986, the Commission denied Ms. Charles' Application for Review and adopted as its own the findings and decision of the Appeals Tribunal pursuant to § 288.200.1, RSMo Supp.1984. Ms. Charles filed a petition for judicial review in the Circuit Court of Cole County. The trial court affirmed the decision of the Commission. Ms. Charles appeals.

■ Ms. Charles first alleges that the trial court erred in affirming the decision of the Commission because she was denied a fair hearing in that the hearing was conducted by a telephone conference. Because of the use of the telephone conference to conduct the hearing, she asserts, the appeals tribunal (referee) did not have an opportunity to observe visually the demeanor and attitude of the individuals testifying and, thus, could not adequately determine credibility. Ms. Charles further complains that the telephone conference hearing limited her right to confront and cross-examine the employer's witnesses, thereby depriving her of her right to a fair and impartial hearing.

The Commission, not the referee, rules on the credibility of witnesses. *Husky Corporation v. Labor & Industrial Relations Commission*, 628 S.W.2d 378, 379 (Mo.App.1982). Moreover, stringent procedural requirements apply regarding the raising and preservation of constitutional issues, including allegations of lack of due process. Constitutional issues must be

raised at the first available opportunity. *Gaslight Real Estate Corp. v. Labor & Industrial Relations Commission*, 604 S.W.2d 818, 820–21 (Mo.App.1980). Ms. Charles, herself, requested the telephone hearing. The notice form specifically advised her that she could attend a hearing in either Illinois or Missouri. She had an absolute right not to participate in the telephone hearing. 8 CSR 10–5.030(2). Furthermore, her petition for review filed in the circuit court did not, by any possible construction, complain of the hearing's having been conducted by telephone. The record before this court contains no mention of the issue. Since Ms. Charles affirmatively elected to have her hearing conducted by telephone and, further, failed to complain until her case was briefed, she has waived any right to complain or to seek appellate review.

Ms. Charles also alleges that the trial court erred in affirming the decision of the Commission because the decision was not based upon substantial evidence in that the evidence did not support the finding that Ms. Charles left her employment without good cause attributable to her work or her employer.

■ This court reviews the decision of the Commission, not the judgment of the circuit court. In the absence of fraud, the Commission's findings of fact are conclusive if supported by competent and substantial evidence, and the jurisdiction of the court is confined to questions of law. Evidence is considered in the light most favorable to the Commission's findings, together with all reasonable inferences to be drawn therefrom. Unless the Commission's findings are clearly contrary to the overwhelming weight of the evidence, this court will not substitute its judgment for that of the Commission or set aside the Commission's findings and order. *Powell v. Division of Employment Security, Labor & Industrial Relations Commission*, 669 S.W.2d 47, 50 (Mo.App.1984); § 288.210, RSMo Supp. 1985.

The issue is whether the Commission's findings support the conclusion that Ms. Charles voluntarily left her job without

"good cause". Under § 288.050.1(1), RSMo Supp.1984, the Division is required to deny benefits if the deputy finds that the employee has left work voluntarily without good cause attributable to her work or her employer. Whether the favorable evidence establishes good cause is a question of law and this court is not bound by the findings of the Commission. *Backer's Potato Chip Company v. Labor & Industrial Relations Commission*, 679 S.W.2d 909, 911 (Mo.App.1984).

The standard as to what constitutes good cause is the standard of reasonableness as applied to the average man or woman. The circumstances motivating an employee to terminate employment must be "real not imaginary, substantial not trifling, and reasonable not whimsical, and *good faith* is an essential element." *Belle State Bank v. Industrial Commission*, 547 S.W.2d 841, 846 (Mo.App.1977). Good cause is limited to instances where the unemployment is caused by external pressures so compelling that a reasonably prudent person would be justified in terminating employment. *Citizens Bank of Shelbyville v. Industrial Commission*, 428 S.W.2d 895, 899 (Mo.App.1968). The claimant has the burden of showing she had good cause for quitting. *Id.* Absent discriminatory or unfair or arbitrary treatment, mere dissatisfaction with working conditions does not constitute good cause for quitting employment unless the dissatisfaction is based upon a substantial change in wages or working conditions from those in force at the time the claimant's employment commenced.

Although Ms. Charles' expectations may have been legitimate according to her own perspective, the record does not corroborate her subjective evaluation of potential employment income and benefits. Furthermore, by Debra Charles' own testimony, the terms of employment made known to her on October 8, 1984, when she commenced the position with M.J., were that the salary would be $5 per hour and matters related to her expectations of receiving other items or benefits would later be resolved. There is nothing in the record to be deemed good cause for Ms. Charles' voluntarily terminating her employment. Judgment affirmed.

All concur.